## DANIELS *v.* SMITH *et al.*

Where to the levy of a distress warrant the defendant interposed a counter-affidavit and gave a replevy bond in terms of the statute, conditioned to pay the eventual condemnation-money, the security on such bond could not afterwards maintain as a defense that at the time of signing he was assured that it was only a forthcoming bond, that he signed it with the understanding that it was only a forthcoming bond and not a bond for the eventual condemnation-money, and with the further condition that if his attorneys, upon the bond being submitted to them, should construe it to be condemnation-money bond it should be destroyed and he should not be bound as security upon it, and that they did so construe it when it was submitted to them. Such defense was an attempt to contradict and vary the terms of a valid written instrument by parol contemporaneous evidence.

JANUARY 15, 1916.

Distraint. Before Judge Worrill. Early superior court. October 7, 1914.

H. G. Smith sued out a distress warrant against Clarence Thomas, who interposed a counter-affidavit and gave a replevy bond signed by himself as principal and J. B. Daniels as security. When the case was called for trial of the issue so made, Daniels presented to the court a verified petition praying that he be allowed to intervene and be made a party defendant, and that he be adjudged, upon proof of the facts he alleged, not liable on the bond. Upon objection the court refused to allow this defense, and, after the plaintiff had proved his case against Thomas, directed a verdict for the plaintiff and entered up judgment against Thomas as principal, and Daniels as security on the replevy bond, for the amount of rent proved to be due. Daniels excepted. In the petition referred to he set up the following: After the levy of the distress warrant, the deputy sheriff and one Odum (the agent of Smith) came to Daniels, advised him of the levy, and requested that he sign as surety a bond which was then and there presented to him. He was unlearned in legal phraseology, but on reading the bond he construed it to be not a bond for the forthcoming of the property levied upon, but an eventual-condemnation bond, and therefore he refused to sign it. The deputy sheriff and Odum importuned him to sign the bond, stating that it was for the forthcoming of the property; but he still refused to sign, as he construed the bond presented for his signature to be an eventual-condemnation bond.

36

Odum and the officer continued to urge him to sign the bond, and he declared that he would not do so until he had consulted his attorneys, and if it was construed by them to be an eventual-condemnation bond he would not sign it at all. After the officer and Odum became convinced that he would not become surety upon the bond, and the officer being without means of moving the property, it was agreed that Daniels should hold the property in custody for the officer until the next day, without giving bond therefor. The officer and Odum represented that it was a long distance to the county seat, and that it was expensive to be coming out to Daniels' plantation, and requested him to sign the bond which had been presented to him and to deliver it to them, so that, in the event his attorneys advised that it was merely a forthcoming bond, Odum and the officer would not have to make an additional trip to Daniels' farm, and in the event the attorneys should advise that it was an eventual-condemnation bond, then the bond so signed should be destroyed; and it was then and there agreed that in no event should intervenor be bound as security on said bond as an eventual-condemnation bond; and the paper was signed and delivered to Odum and to the deputy sheriff with the understanding that it was not to become operative if the attorneys should decide that it was an eventual-condemnation bond. On the day after the execution of the bond Daniels advised the deputy sheriff and Odum that his attorneys had construed the paper to be an eventual-condemnation bond, and surrendered the property, and demanded that the bond be destroyed or that his name be stricken therefrom as surety, which Odum and the deputy sheriff refused to do. Thomas, the principal in the bond, is insolvent.

*H. M. Calhoun* and *Rambo & Wright,* for plaintiff in error.

*R. H. Sheffield,* contra.

Beck, J. (After stating the foregoing facts.) There was no allegation of any writing contemporaneous with the bond, embodying the terms and conditions upon which the paper was to become void and inoperative, as set forth in the petition of Daniels, the security. Manifestly, from the recitals in the application, it is an attempt to destroy by parol evidence the binding force of the bond by the addition of terms not contained in the instrument itself, as it recites the statements made by Odum and the deputy sheriff, and by the plaintiff in error to those parties, as being the

grounds for adjudging the bond not to be valid and binding as to the surety. Section 5788 of the Code of 1910 provides that parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid wr.tten instrument. And to have allowed the surety upon this bond to make the defense set up would have been in violation of the provision of our law contained in this section. In the case of *Hirsch* v. *Oliver,* 91 *Ga.* 554 (18 S. E. 354), which was a suit upon certain promissory notes, it was said: "The plea which sought to contradict the notes by setting up an understanding that the maker was not to be bound, that the notes were executed for a purpose other than that of binding him to pay money—a purpose wholly at variance with their plain tenor and import,—contained no suggestion that the understanding and purpose alleged were evidenced by any writing, or that anything was omitted from the notes by fraud, accident, or mistake. It contained no denial of the making and delivery of the notes, but simply sought to run over them and crush them by an alleged contemporaneous understanding or agreement in conflict both with their letter and their legal effect. This plea presented no valid defense to the action, and there was no error in striking it."

And in the case of *Lewis* v. *Board of Commissioners,* 70 *Ga.* 486, which was a suit upon a county treasurer's bond, a surety upon the bond set up the defense that it was not to be binding unless signed by certain other named persons as sureties. It was held: "Where the bond of a county treasurer was absolute on its face, and it did not appear, either from it or any other writing prior or contemporaneous therewith, that it was left with the ordinary on condition, after breach of the bond by the principal the sureties could not set up by way of defense, and establish by parol, that when they signed the bond and left it in the hands of the officer authorized to receive it, they stated to him that they were not to be bound until other sureties, whom they named, had also signed." Numerous other decisions to the same effect might be cited, but it is unnecessary. Many of them will be found collected and cited under the code section set forth above.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*